UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Wilbur Allmond and Gilberto Wise, Plaintiffs, | § § § § § § § § § § § | CIVIL ACTION NO. ____ <br> **SA04CA1142** <br><br><br><br><br> A JURY IS DEMANDED |
| vs. | | |
| Akal Security, Inc. and John Ashcroft, Attorney General of the United States, Defendants | | |

**Plaintiffs' Original Complaint**

Gilberto Wise and Wilbur "Gene" Allmond bring this lawsuit to challenge their job losses. Although each performed his job as a Court Security Officer admirably, he was terminated because of a perceived disability.

PARTIES

1. The plaintiff Gilberto Wise is an individual who lives in San Antonio, Texas.

2. The plaintiff Wilbur "Gene" Allmond is an individual who lives in Hamilton, Georgia.

3. The defendant Akal Security, Inc., is a New Mexico corporation doing business in Texas, including the Western District of Texas, and may be served with process by serving its registered agent, Richard Wimberly, 110 S. Kingwood Dr., Suite 203, Kingwood, TX 77339.

4. The defendant John Ashcroft is currently the United States Attorney General and may be served with process at his business address, Office of the Attorney General, Department of Justice, Constitution and 10th Ave., N.W., Washington, D.C. 20530. A copy of this complaint is also served on the United States Attorney for the Western District of Texas.



1

## JURISDICTION

5. This case is brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6. Venue is invoked pursuant to 28 U.S.C. § 1391.

## STATEMENT OF THE PLAINTIFFS' CASE

7. The plaintiff, Gilberto Wise, has been in the law enforcement field for almost 30 years. He served for many years as an undercover agent for the INS. In that role, his excellent work assisted the government in breaking up a number of alien smuggling rings. He retired from that position when he reached mandatory retirement age of 57.

8. In November 2002, Mr. Wise was hired to work as a Court Security Officer by Akal Security, Inc., a contractor of the United States Marshal's Service. Akal has been hired to provide court security officers at federal courthouses around the country, including the federal courthouse in San Antonio, Texas and the federal courthouse in Columbus, Georgia.

9. Wise did a fine job as a Court Security Officer. But, on September 30, 2003, he was fired from his job by Akal. Akal Human Resources Officer Mukhtiar Khalsa informed him that the U.S. Marshal's Service had advised Akal that Mr. Wise was medically disqualified from the position of CSO because of his diabetes and that Akal was required by law to remove him from his position.

10. Even though Akal knew that Wise was eminently qualified to continue working as a CSO, it fired him based on his disability.

11. The plaintiff, Gene Allmond is a retired police officer who has over 36 years of law enforcement experience. He served as a detective in Columbus, Georgia, for many years and

supervised a staff of other detectives. He also worked as a patrol sergeant of the Columbus police department. He has 18 years of experience as a police supervisor.

12. Mr. Allmond worked as a Court Security Officer for almost a year at the federal courthouse in Columbus, Georgia. He was approached by Akal to do that job before he had retired from his supervisory position with the Columbus police department. Beginning April 1, 2003, Mr. Allmond did the job of a Court Security Officer professionally and competently. Then, on February 3, 2004, he was terminated from his job as a Court Security Officer. Akal representative Khalsa informed him that he was being terminated because the Department of Justice said he was not medically qualified for the job.

13. Akal knows that Allmond is qualified for the job and that he had done the job without any difficulty. Despite this fact, it fired him.

14. The demand that Mr. Allmond take a hearing test without a hearing aid is a screening criteria that screens out the disabled. The decision of the government and Akal to dismiss an employee on this basis is per se unlawful.

15. Allmond has a hearing impairment from years of working as a police officer. However, with the assistance of hearing aids, which are allowed on the job, he meets the hearing standards set by the U.S. Marshal's Service.

16. Before both plaintiffs started working for the Marshal's Service, they were informed that they needed to undergo a physical in connection with the job. Both took the physical and were then put to work. Neither had any difficulty with the work assigned.

17. The government says that Mr. Wise's diabetes poses a significant danger to himself and others because of its perception of a single lab reading. In fact, Mr. Wise had a much higher A1c (glycoslated hemogobin test) at the beginning of his tenure with Akal than he

3

did at the end. This test simply averages an individuals blood glucose levels over a 60-90 day period. The decision of the government and Akal to dismiss an employee based solely on this test is no more and no less than discrimination based on his status as a newly diagnosed person with type 2 diabetes. The truth is that neither his diabetes or the lab result has anything to do with his ability to perform his job duties. In fact, he controls his diabetes without any insulin at all.

18.  The government claims that Mr. Allmond poses a significant risk to the health and safety of the public, law enforcement officers and himself because of his inability to pass the government's hearing test without hearing aids. Even though hearing aids can be worn on the job, Mr. Allmond was told he could not wear them for the hearing test.

## Disability Discrimination

19.  Both plaintiffs did perform their job as a Court Security Officer very well, but they were fired because of perceived disabilities. Akal's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability. Ashcroft's conduct violates the Rehabilitation Act, which also prohibits disability discrimination. Plaintiffs are qualified individuals with disabilities and were discriminated against because of such disabilities.

20.  In imposing a requirement that Plaintiffs may not use hearing aids for medical testing (even though allowed on the job) and screening out individuals with diabetes based solely on perceptions about a glycosolated hemoglobin test, the Defendants have violated the ADA and the Rehabilitation Act , respectively, which prohibit an employer from using qualification standards that screen out the disabled. 42 U.S.C. 12112(b)(6) and 29 U.S.C. 791 et seq. Defendants' conduct in discharging Plaintiffs constitutes discrimination in employment on the basis of a disability or perceived disability.

21. Each plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered by Akal and Ashcroft. Each plaintiff has received a right to sue letter from the EEOC on this charge and timely files this lawsuit to vindicate his rights. In addition, each plaintiff has received a right to sue letter from the Equal Employment Office of the Justice Department and timely files this lawsuit to vindicate his rights.

## Damages

22. The damages suffered by the plaintiffs include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

23. Further, because Akal's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiffs are entitled to an award of these damages.

## RELIEF REQUESTED

The plaintiffs ask this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

2. Enjoining and permanently restraining these violations of law;

3. Directing the defendants to pay each plaintiff actual and compensatory damages that he suffered, past and future, and to reinstate him;

4. Directing the defendant, Akal Security, to pay plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;t

5. Awarding plaintiffs pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6. Awarding plaintiffs the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7. Awarding plaintiffs post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8. Awarding plaintiffs such other relief, legal or equitable, as may be warranted.

Respectfully submitted,

*John Griffin* by permission

JOHN GRIFFIN, JR.
State Bar No. 08460300
One Twenty Main Place, 3rd Floor
Victoria, Texas 77902
(361) 573-5500 – Telephone
(361) 573-5040 – Telecopier

**Attorney in charge for Plaintiffs**

Of Counsel

Rebecca D. Rozmus and

**HOUSTON, MAREK & GRIFFIN, L.L.P.**

*Katherine Butler*

**Katherine L. Butler**
State Bar No. 03526300
Margaret A. Harris
State Bar No. 09081400
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (713) 526-5691